**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| TEN NAILS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 2:23-cv-00165 |
| | § | |
| STATE AUTOMOBILE MUTUAL | § | |
| INSURANCE COMPANY, | § | **JURY DEMANDED** |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Ten Nails, Plaintiff herein, files this Original Complaint against Defendant State Automobile Mutual Insurance Company and, in support of its causes of action, would respectfully show the Court the following:

### I.
### THE PARTIES

1. Ten Nails, LLC ("Ten Nails") is a limited liability company that is a citizen of the State of Texas. All of its members are citizens of the State of Texas. Specifically, its sole member resides at the following address:

   Anh Do
   2008 Denfield Ln.
   Childress, TX 79201

2. Defendant State Automobile Mutual Insurance Company (hereinafter referred to as "State Auto"), was, and is at the date of this filing, an Ohio corporation incorporated in the state of Ohio with its principal place of business located at 518 E Broad St., Columbus, Ohio 43215. State Auto, therefore, is not a citizen of the state of Texas for diversity purposes. State Auto may

be served via certified mail return receipt requested via its registered agent for service in the state of Texas, Corporation Service Company, 211 E 7th Street, Ste 620, Austin, TX 78701-3218.

## II.
## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this cause of action under 28 U.S.C. § 1332. Plaintiff is a limited liability company formed in the State of Texas, and its sole member, Anh Do, resides in Texas at 2008 Denfield Ln., Childress, TX 79201, which is her true, fixed, and permanent home. Therefore, Plaintiff is a citizen of Texas. Defendant is a corporation incorporated in Ohio and has its principal place of business in Ohio and is, thus, a citizen of Ohio. Therefore, as Plaintiff is a citizen of Texas, and Defendant is a citizen of Ohio, complete diversity exists. Additionally, Plaintiff seeks damages in excess of $75,000. Specifically, Plaintiff seeks proceeds from its insurance policy in the amount of $192,079.66, plus attorneys' fees and interest. Further, Plaintiff alleges Defendant knowingly committed the acts complained of herein. As such, Plaintiff is entitled to extra-contractual damages pursuant to the DTPA and Texas Insurance Code Section 541.152(a)-(b).

4. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas, Amarillo Division. The property at issue in this cause is in the Northern District of Texas, Amarillo Division.

## III.
## FACTUAL BACKGROUND

5. Ten Nails is a named insured under an insurance policy issued by State Auto identified as Policy 10140210CB ("Policy"). At all times relevant to this suit, Ten Nails was the owner of the property located at 2202 Avenue F NW, Childress, TX 79201-2216 ("Property") and a named insured under the Policy.

6. The Property sustained massive water-related damages on November 1, 2022, or at all times during the Policy period, causing extensive damages to the Property. The water caused damage to the main salon, including the drywall, tile floor covering, and baseboards. The water caused damage to the heater closet, including the water heater, insulation, and tile floor covering. The water caused damage to the storage area/room, including the insulation, baseboards, and tile floor covering. The water caused damage to the massage room, including the insulation, base boards, tile floor, and vanity. The water caused damage to the breakroom, including the insulation, baseboards, tile floor covering, and cabinetry. The water also caused damage to the utility room/restroom, including the baseboards, insulation, and tile floor. The water damage was evident from the water lines at the Property:





7. Any competent inspection of the Property after a sustained water loss would have included taking moisture readings of the damaged flooring. The moisture readings demonstrated significant moisture under the tile flooring:



8. Removing the tile floor covering demonstrated the serious moisture intrusion into the flooring system:



9. Ten Nails reported the water loss and damage it caused to the Property to State Auto. State Auto acknowledged receipt of the claim and commenced its investigation.

10. State Auto assigned Samantha Long to adjust the claim. Ms. Long never inspected the Property. Upon receiving the letter of representation of Ten Nails' licensed public adjuster in the State of Texas, Tom Rosenthal of Clear Loss Consultants, Ms. Long asked for a copy of his contract with the insured as well as Mr. Rosenthal's license. Public adjusters' contracts in Texas must be approved by the Texas Department of Insurance. Further, confirming Mr. Rosenthal is licensed is publicly available on the Texas Department of Insurance's web site and takes approximately two minutes. Instead of doing this, Ms. Long caused the claim to be delayed with unnecessary information that could have easily been confirmed on her own.

11. On November 28, 2022, Ms. Long advised, "our investigation was still ongoing." Yet, at that point, there was no indication any investigation was ongoing. Ms. Long also advised on November 28, 2022 State Auto was assigning V'Rhett Williams ("Williams") to adjust the claim. Williams does not work for State Auto but instead works for Engle Martin, a firm routinely hired by insurance carriers to adjust claims on their behalf. Ms. Long also advised State Auto had hired an engineer, which did not appear to be truthful.

12. Mr. Rosenthal advised Ms. Long on November 29, 2022 that there was water trapped under the flooring, and, while some tiles were separating, there was a concern regarding the water trapped under the floor. Mr. Rosenthal also advised if State Auto was intending to engage an engineer, the engineer should be prepared to identify and register moisture beneath the tile.

13. On November 29, 2022, Ms. Long advised Mr. Rosenthal she had updated the file with the concerns about the tile floor.

14.     On December 5, 2022, Ms. Long advised she was waiting on receipt of the engineering report as well as an estimate from the adjuster. This was a misrepresentation because there was not even an engineer hired at that point.

15.     Williams inspected the Property on or about December 13, 2022. Once at the Property, Williams conducted a substandard inspection, during which he spent an inadequate amount of time inspecting the physical Property, failed to conduct any testing of water damage and its impact on the structure (including moisture analysis or testing), and failed to thoroughly scope all the damages to the Property. Williams simply determined, without any reasonable basis, that the Property had been only minimally damaged by water. In doing so, Williams willfully disregarded the full scope of the water damage. The inadequacy of the inspection and investigation is further evidenced by Williams' failure to give an adequate explanation as to why he believed there was minimal water damage and why the damages he did observe did not warrant a further scope of damages or, at minimum, further moisture analysis despite a significant water event during the Policy period and corresponding damage. Further, Williams failed to explain why he omitted the damages from his report caused by obvious water damage during the Policy period with State Auto. Williams failed to properly scope Ten Nails' damages and underestimated and undervalued the cost of repairs to the damaged items, thereby failing to allow adequate funds to cover the cost of repairs to the damages sustained. Williams' estimate even states, "additional inspection and/or investigation of the cause of loss may be required before this estimate is finalized," yet Williams did not do so. Williams' estimate, dated December 13, 2022, was a paltry $2,387.24 in replacement cost damages and $149.39 in contents. This estimate is an embarrassment if it was truly an attempt to evaluate the covered damages.

16. On or before December 20, 2022, Ms. Long at State Auto referred Ten Nails to Cameron Sears, another adjuster at Engle Martin—not State Auto. Mr. Rosenthal, on behalf of Ten Nails, inquired with Mr. Sears on December 20, 2022 as to why there was no payment or determination from State Auto to date. Mr. Rosenthal asked what investigation was being conducted as there did not appear to be any.

17. On December 20, 2022, after speaking to Mr. Rosenthal, Cameron Sears of Engle Martin emailed the estimate to V'Rhett Williams for cleaning and baseboard damages totaling $2,536.63. Mr. Sears confirmed on that date State Auto would be issuing a payment of $1,536.63 for that undisputed payment after subtracting the $1,000 deductible.

18. On December 21, 2022, Restoration Partner of Allen, Texas prepared a restoration estimate for mitigating the property. This estimate only totaled $40,186.84.

19. On December 21, 2022, Tom Rosenthal of Clear Loss Consultants prepared an estimate of damages totaling $74,362.32 and provided that to State Auto. Unfortunately, no contractor will agree to perform the work for that amount given the location of the property and available contractors. Ten Nails did secure a bid from Restoration Partner dated December 21, 2022 for $152,565.20 for repairs and remodel.

20. On December 29, 2022, Cassy Shafer of Summit Restoration Auditing, a company routinely hired by insurance companies, prepared a mitigation estimate. This estimate totaled $28,690.14.

21. On January 13, 2023, Mr. Rosenthal issued correspondence to Mr. Sears stating there had been no serious effort by State Auto to move the claim towards resolution and the lack of action on State Auto's part was driving up the costs of the claim. Mr. Rosenthal attached a few samples of mitigation photos demonstrating the damage was far beyond the paltry estimate of Mr.

Williams. Mr. Rosenthal advised the insured was looking for a temporary location to move the business to and advised Ten Nails' loss of income was mounting and the cost of the claim was at least 100 times State Auto's current estimate.

22. On January 13, 2023, Mr. Sears, copying Mr. Williams on the correspondence, advised the delay could have been due to the engineer and the holidays.

23. On January 13, 2023, Mr. Rosenthal responded to Mr. Sears stating the damage was obvious, citing photograph SYKU7589 taken by the mitigation company.

24. On January 13, 2023, V'Rhett Williams advised State Auto could have an engineer available to inspect the Property on January 16, 2023. Mr. Rosenthal, on behalf of Ten Nails, advised he could make that work the same day.

25. On January 15, 2023, Mr. Rosenthal, on behalf of Ten Nails, advised that any activity regarding the proposed inspection would be subject to audio and video recording. Mr. Rosenthal further reiterated that he specified to Ms. Long there was water trapped beneath the tile that could not be dried with fans and that this water was not only weakening the bond of the thin-set mortar but also provided media for microbial growth. Mr. Rosenthal stated the recent photo provided to Mr. Williams demonstrated that evidence. Mr. Rosenthal stated that if the proposed engineer did not have the necessary equipment to test and evaluate moisture under the tile and the training to use it, they would not be allowed access to the building because an engineer's opinion without scientific data is subjective and adds no value to the discussion.

26. On January 16, 2023, after the insured and Mr. Rosenthal cleared their calendars for the inspection, State Auto abruptly <u>cancelled</u> the inspection, stating the engineering firm was declining to proceed under the terms outlined in Mr. Rosenthal's correspondence. This begs the

question, if the engineering firm and State Auto had nothing to hide, why would they not agree to have their activities recorded and conduct moisture testing?

27. On January 31, 2023, State Auto finally had an engineer inspect the property, and it was documented he was reading moisture beneath the tile.

28. On February 2, 2023, Ten Nails' attorneys sent correspondence to Ms. Long requesting, among other items, all damage estimates and photographs (in native format) of all damage as a result of the above referenced loss or State Auto's evaluation of the loss, as well as copies of any documents evidencing payment issued to date and any explanation of payment or any coverage decision by State Automobile Mutual Insurance Company.

29. In response, Ms. Long sent back a water mitigation estimate done by Cassy Shafer, Williams Engle Martin estimate, and the Policy. No photographs were provided nor an engineering report.

30. After Ten Nails was forced to retain legal counsel, only then did State Auto issue a check for $34,259.39 on March 16, 2023 for some of the repairs and mitigation, but this amount fell far below the actual costs to repair and conduct mitigation.

31. Despite being represented by legal counsel, State Auto did not send its March 29, 2023 Partial Declination letter to the insured's counsel but, instead, to Clear Loss Consultants. The Partial Declination fails to address that there is water trapped under the tile and that water is weakening the bond between the thin-set mortar and the tile. Second, the engineer hired by State Auto did not inspect the loss until January 31, 2023—90 days after the loss. Yet, on that date, he was able to demonstrate conclusively that there was, in fact, moisture trapped under the tile. Mr. Rosenthal provided photos in his report of his moisture meter. The moisture alone is enough to justify the replacement of the tile. State Auto likewise failed to explain how the engineer can

establish if the bonding was lost or inadequate before the loss. State Auto cannot dispute mortar under water will lose its adhesion.

32. This is the exact scenario insureds hope to avoid when faced with devastating water damage after dutifully paying premiums. Long, Williams, and Sears, the adjusters assigned to the claim, were improperly trained and failed to perform a thorough investigation of this claim. Although State Auto and Long, Williams, and Sears were aware of Ten Nails' clear and present water damage and the reported damage was covered by the Policy, they decided the claim should be improperly denied without conducting a thorough and reasonable inspection of the damages. Their inadequate investigation of the claim was relied upon by State Auto in this action and resulted in Ten Nails' claim being improperly undervalued, under scoped, delayed, and under paid. After requesting State Auto reconsider its improper investigation many times and under payment and consider photographs of obvious moisture intrusion and readings and a line-by-line estimate from a licensed public adjuster and mitigation company, State Auto simply kept its valuation of damages minimal, conveniently determining the majority of the obvious damage to the Property was not caused by water or, to date, failing to pay in violation of the Texas Insurance Code and the Policy. Again, this means Ten Nails, to date, has received inadequate payment to perform the necessary repairs to the Property, has incurred substantial business losses that are ongoing, and has been treated in bad faith.

33. The inadequacy of the State Auto inspection and investigation is further evidenced by its failure to give Ten Nails an adequate explanation as to why State Auto believed there was only minimal mitigation and water damage, or why it is delaying payments, including even those payments consistent with its own mitigation report. State Auto never explained why it does not

believe there is moisture intrusion under the tile or why it has not, at minimum, paid what its own mitigation adjuster determined was owed.

34. State Auto, along with its personnel, failed to thoroughly review and properly oversee the work of the assigned claims representative and adjusters, including Long, Williams, and Sears, ultimately approving an improper adjustment of and an inadequate and improper denial and delay of Ten Nails' claim. State Auto misrepresented to Ten Nails the majority of the damages were not covered, when the losses, in fact, were clearly covered causes of loss during the Policy's period. Specifically, State Auto represented to Ten Nails only a fraction of the damage in excess of the Policy's deductible was caused by a covered cause of loss within the Policy period without any proper investigation when, in fact, State Auto knew, or with a reasonable investigation should have known, that the cost of repairs to all the damages in excess of the Policy's deductible was a clear covered loss.

35. Together, State Auto, Long, Sears, and Williams set out to deny properly covered damages. Because of this unreasonable investigation and failure to provide adequate coverage for the damages sustained, Ten Nails' claim was improperly adjusted and has been delayed, and Ten Nails was denied payment to fully repair the Property. To this date, Ten Nails has yet to receive adequate payment under the insurance Policy.

## IV.
## CAUSES OF ACTION

36. Each of the foregoing paragraphs is incorporated by reference in the following:

**A.     Breach of Contract**

37. State Auto had a contract of insurance with Plaintiff. State Auto breached the terms of that contract by wrongfully denying the claim, and Plaintiff was damaged thereby.

**B.    Prompt Payment of Claims Statute**

38.    The failure of State Auto to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code.

39.    Plaintiff, therefore, in addition to Plaintiff's claim for damages, is entitled to statutory interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

**C.    Bad Faith/Deceptive Trade Practices Act ("DTPA")**

40.    Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

41.    Defendant violated Section 541.051 of the Texas Insurance Code by:

(1)    making statements misrepresenting the terms and/or benefits of the Policy. As referenced above, State Auto mispresented coverage for water damage to the Property during the Policy period was a covered cause of loss and misrepresented to Ten Nails the coverage's terms.

42.    Defendant violated Section 541.060 by:

(1)    misrepresenting to Plaintiff a material fact or Policy provision relating to coverage at issue;

(2)    failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

(3)    failing to promptly provide to Plaintiff a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

9

(4) failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and

(5) refusing to pay the claim without conducting a reasonable investigation with respect to the claim. As referenced above, State Auto failed to meet its statutory timelines governed by the Texas Insurance Code, failed to respond to multiple requests for information, failed to disclose information it relied on in its investigation, failed to conduct testing of the damage, and failed to allocate damage occurring during the Policy period.

43. Defendant violated Section 541.061 by:

(1) making an untrue statement of material fact;

(2) failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made; and

(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. As referenced herein, Defendant misrepresented water damage that occurred during the Policy was not a covered loss, failed to provide requested information used to render its claim decision, and claimed water damage was preexisting without conducting a reasonable investigation.

44. At all material times hereto, Plaintiff was a consumer who purchased insurance products and services from Defendant.

45. Defendant has violated the Texas DTPA in the following respects:

(1) Defendant represented that the agreement confers or involves rights, remedies, or obligations which it does not have, or involve, or which are prohibited by law;

(2) State Auto failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed;

(3) State Auto, by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by Section 17.50(a)(1)(3) of the DTPA in that State Auto took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Texas Insurance Code.

46. Defendant knowingly committed the acts complained of herein. As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code Section 541.152(a)-(b).

**D.  Breach of the Duty of Good Faith and Fair Dealing**

47. Defendant State Auto's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to Plaintiff.

48. Defendant State Auto's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, Defendant State Auto knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## V.
## KNOWLEDGE

49. Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

**E.     Attorneys' Fees**

50. Plaintiff engaged the undersigned attorneys to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

51. Plaintiff is entitled to reasonable and necessary attorneys' fees pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because Plaintiff is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

52. Plaintiff further prays that Plaintiff be awarded all reasonable attorneys' fees incurred in prosecuting Plaintiff's causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## VI.
## CONDITIONS PRECEDENT

53. All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant.

## VII.
## JURY DEMAND AND PRAYER

54. Plaintiff requests that a jury be convened to try the factual issues of this case.

55. WHEREFORE, PREMISES CONSIDERED, Ten Nails prays that, upon final hearing of the case, it recover all damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Ten Nails be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Ten Nails may show itsself to be justly entitled.

Respectfully submitted,

*/s/ Christopher P. Peirce*
Jeffrey T. Embry
Bar Number: 24002052
Margaret C. Pennell
Bar Number: 24116893
Hossley Embry, LLP
515 S. Vine Ave.
Tyler, Texas 75702
Telephone No. 903-526-1772
Telecopier No. 903-526-1773
jeff@hossleyembry.com
meg@hossleyembry.com

AND

Christopher P. Peirce
Bar Number: 24041509
Hossley Embry, LLP
14241 Dallas Pkwy, Suite 240
Dallas, Texas 75254
Telephone No. 214-390-2349
cpeirce@hossleyembry.com

**ATTORNEYS FOR PLAINTIFF**